[856 NYS2d 808]

DAY WHOLESALE, INC., et al., Respondents, v STATE OF NEW YORK et al., Appellants. (Appeal No. 1.)

Fourth Department, May 2, 2008

APPEAL from an order of the Supreme Court, Erie County (Rose H. Sconiers, J.), entered February 20, 2007. The order, among other things, granted plaintiffs' motion for a preliminary injunction and denied defendants' cross motion to dismiss the complaint.

## APPEARANCES OF COUNSEL

*Andrew M. Cuomo, Attorney General*, Albany (*Andrew D. Bing* of counsel), for appellants.

*Margaret A. Murphy*, Buffalo, for respondents.

*Barr & Associates, P.C.*, Stowe, Vermont (*Daniel A. Seff* of counsel), *Dale T. White*, Hogansburg, and *Hobbs, Straus, Dean & Walker, LLP*, Washington, D.C., for the Saint Regis Mohawk Tribe, amicus curiae.

## OPINION OF THE COURT

GREEN, J.

Tax Law § 471-e (as amended by L 2005, ch 61, part K, § 2; ch 63, part A, § 4) embodies the Legislature's most recent effort to collect taxes on cigarettes sold on Indian reservations. The primary issue before us is whether the amended version of the statute is presently in effect. We conclude that it is not.

Plaintiff Day Wholesale, Inc. (Day) is a wholesale dealer of cigarettes (*see* Tax Law § 470 [8]) and a licensed cigarette stamping agent (*see* § 470 [11]), and plaintiff Scott B. Maybee is a member of the Seneca Nation of Indians (Seneca Nation) who owns and operates businesses engaged in the wholesale and retail sale of cigarettes on land owned by the Seneca Nation. Plaintiffs commenced this action seeking a determination that the amended version of Tax Law § 471-e is not in effect and injunctive relief preventing the enforcement of the amended version of the statute against them.

Pursuant to Tax Law § 471 (2), the ultimate liability for the cigarette tax falls on the consumer, but the cigarette tax is advanced and paid by agents such as Day through the use of tax stamps (*see* Tax Law § 473). The tax applies to "all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax" (§ 471 [1]). Those circumstances pertain only to some of the cigarettes sold on Indian reservations. The amended version of Tax Law § 471-e is designed to serve dual goals, i.e., providing for the collection at the wholesale level of cigarette tax from non-Indians or Indians purchasing cigarettes off of their own reservation and

exempting from the cigarette tax purchases made by qualified Indian consumers. In furtherance of the first goal, the statute mandates that "all cigarettes sold on an Indian reservation to non-members of the nation or tribe or to non-Indians shall be taxed, and evidence of such tax will be by means of an affixed cigarette tax stamp" (§ 471-e [1] [a]). In furtherance of the second goal, the statute creates a procedure enabling qualified Indians to purchase cigarettes for their "own use or consumption exempt from cigarette tax on their nations' or tribes' qualified reservations" (*id.*). Thus, with respect to the second goal, the statute provides for the distribution of Indian tax exemption coupons to Indian nations or tribes based upon a determination by the Department of Taxation and Finance (Department) of "probable demand of the qualified Indians on such nation's or tribe's qualified reservation plus the amount needed for official nation or tribal use" (§ 471-e [2] [b]).

> "A reservation cigarette seller [may] present such Indian tax exemption coupons to a wholesale dealer . . . in order to purchase stamped cigarettes exempt from the imposition of the cigarette tax. Qualified Indians may purchase cigarettes from a reservation cigarette seller exempt from the cigarette tax even though such cigarettes will have an affixed cigarette tax stamp" (§ 471-e [1] [b]).

Subdivision (2) (c) of section 471-e prescribes both the form of the Indian tax exemption coupons and the information to be included thereon. Subdivision (3) of that section addresses the use of such coupons by an Indian nation, tribe or reservation cigarette seller to make purchases of cigarettes without payment of the cigarette tax. Subdivision (4) permits a wholesale dealer to seek a refund of a cigarette tax paid but not collected because the wholesale dealer accepted an Indian tax exemption coupon from its purchaser.

The Legislature provided that the amended version of Tax Law § 471-e "shall take effect March 1, 2006, provided that any actions, rules and regulations necessary to implement the provisions of [the statute] on its effective date are authorized and directed to be completed on or before such date" (L 2005, ch 63, part A, § 4).

The Department, however, did not take any action or promulgate any rules or regulations necessary to implement the statute on or before March 1, 2006. Rather, on March 16, 2006, the Department issued an advisory opinion setting forth its po-

sition that, consistent with its longstanding policy of forbearance (*see generally Matter of New York Assn. of Convenience Stores v Urbach*, 275 AD2d 520, 522-523 [2000], *appeal dismissed* 95 NY2d 931 [2000], *lv denied* 96 NY2d 717 [2001], *cert denied sub nom. New York Assn. of Convenience Stores v Roth*, 534 US 1056 [2001]), it would not begin enforcement of the statute on March 1, 2006. Despite the Department's position, defendant Attorney General of the State of New York concluded that the amended version of the statute was effective and subject to enforcement as of March 1, 2006. Based on the Attorney General's conclusion, defendant Assistant Attorney General sent a letter to Philip Morris and other cigarette manufacturers advising them that Day and other wholesale cigarette dealers were continuing to sell unstamped cigarettes to Indian reservations "in direct violation" of the amended version of Tax Law § 471-e, and warning them that such sales were a matter of "significant concern" to the Attorney General. Philip Morris responded by suspending sales to Day until Day provided assurances to Philip Morris and the Attorney General that it would not sell unstamped Philip Morris cigarettes to Indian reservations or, alternatively, until defendant State of New York provided assurances that the sale of unstamped cigarettes on Indian reservations was not in violation of applicable laws.

After Philip Morris suspended sales to Day, plaintiffs commenced this action asserting that, until the Department takes the actions necessary to implement the amended version of Tax Law § 471-e, the amended version is not in effect. By plaintiffs' order to show cause "with temporary restraining order" signed by Supreme Court, the court enjoined defendants from taking any action to enforce the amended version of Tax Law § 471-e "until a determination is made as to whether or not this Law is in effect." Plaintiffs moved for a preliminary injunction and defendants cross-moved to dismiss the complaint. The court granted the motion, denied the cross motion and preliminarily enjoined defendants from enforcing the amended version of Tax Law § 471-e "until such time as the [Department] has adopted the necessary rules and regulations to implement the Indian Tax Exemption Coupon System and has distributed Indian tax exemption coupons to the recognized governing bodies" of specified Indian nations and tribes. We conclude that the order should be affirmed.

Contrary to defendants' contention, we conclude that the effective date clause expresses the Legislature's intent that the

amended version of Tax Law § 471-e would become effective only in the event that "any actions, rules and regulations *necessary* to implement" its provisions were complete on or before March 1, 2006 (L 2005, ch 63, part A, § 4 [emphasis added]). At a minimum, the actions, rules and regulations necessary for the implementation of the statutory scheme include the issuance of Indian tax exemption coupons. As defendants contend and plaintiffs correctly concede, there is no question that the Legislature intended to create a procedure that would permit the State to collect cigarette taxes on reservation sales to non-Indians and non-members of the nation or tribe while simultaneously exempting from such tax reservation sales to qualified Indian purchasers. Because both aspects of the procedure must function simultaneously, the Legislature provided for a system utilizing Indian tax exemption coupons to distinguish taxable sales from tax-exempt sales. Without the coupon system in place, cigarette wholesale dealers and reservation cigarette sellers have no means by which to verify sales to tax-exempt purchasers. The Legislature recognized the necessity of the coupon system when it provided that the statute "shall take effect March 1, 2006, *provided that* any actions, rules and regulations *necessary to implement* the provisions of [the statute] on its effective date are authorized and directed to be completed on or before such date" (L 2005, ch 63, part A, § 4 [emphasis added]).

Based on the necessity of the implementation of the coupon system to the functioning of the procedure set forth in the amended version of Tax Law § 471-e, we conclude that the effective date clause at issue in this case makes this case distinguishable from *N.Y.A.A.D., Inc. v State of New York* (1 NY3d 245 [2003]), which contains a similar clause in the legislation at issue therein, i.e., the Airbag Safety and Anti-theft Act (Act) (L 1996, ch 161). Pursuant to the Act, as of March 1, 1998 (later extended to March 1, 1999), a vehicle airbag could be replaced only with a new airbag or a salvaged airbag "certified according to standards established by a nationally recognized testing, engineering and research body approved by the commissioner [of Motor Vehicles] in consultation with the superintendent of insurance" (Vehicle and Traffic Law § 415-c [2]; *see* Vehicle and Traffic Law § 398-d [6] [e]). The effective date clause of the Act provides in pertinent part that the Act would "take effect immediately, provided[ ] that . . . the commissioner of motor vehicles shall promulgate such rules and regulations as are necessary to implement the provisions of [the A]ct on or before

January 1, 1997" (L 1996, ch 161, § 11). There were no standards established by a nationally recognized body for the use of salvaged airbags prior to March 1999, and the Commissioner of Motor Vehicles failed to promulgate any rules or regulations necessary to implement the Act (see *N.Y.A.A.D.*, 1 NY3d at 247). After reviewing the language and legislative history of the Act, the Court of Appeals concluded that the Legislature's intent was to ensure public safety and to discourage airbag theft by permitting the replacement of airbags only with new airbags or salvaged airbags meeting certification standards (*id.* at 249-250). In light of that legislative intent, the Court further concluded that the failure of the Commissioner of Motor Vehicles to promulgate rules and regulations pertaining to the use of salvaged airbags did not void the Act (*id.* at 249).

Based on the language and intent of the amended version of Tax Law § 471-e in the instant case, however, we are compelled to conclude that the amended version of the statute is effective only in the event that the Department takes certain actions with respect to the distribution and use of Indian tax exemption coupons and promulgates rules and regulations necessary to implement its provisions. The procedure envisioned by the Legislature cannot function in the absence of those actions. Indeed, the statute expressly requires that the Department "*shall* provide Indian nations and tribes within this state with Indian tax exemption coupons" (§ 471-e [1] [b] [emphasis added]). It further expressly provides that such coupons

> "*shall* be provided to the recognized governing body of each Indian nation or tribe to ensure that each Indian nation or tribe can obtain cigarettes upon which the tax will not be collected that are for the use or consumption by the nation or tribe or by the members of such nation or tribe" (§ 471-e [2] [a] [emphasis added]).

In addition, a reservation cigarette seller may purchase cigarettes without paying the cigarette tax by providing a wholesale dealer with Indian tax exemption coupons (§ 471-e [3] [c] [ii]; [d]), and a wholesale dealer may file a claim for a cigarette tax refund based upon its acceptance of Indian tax exemption coupons (§ 471-e [4]). In sum, unlike the Act at issue in *N.Y.A.A.D.*, the amended version of Tax Law § 471-e cannot become effective absent certain actions, rules and regulations necessary to implement it, and it is undisputed that there have been no such actions taken or rules and regulations promulgated

by the Department. No Indian tax exemption coupons have been printed or issued, and no determination has been made by the Department with respect to the probable demand for or proper distribution of such coupons.

Defendants contend that Indian tax exemption coupons are not necessary to effectuate the Legislature's goals of taxing cigarettes sold on reservations to non-Indians and non-members of the tribe or nation while ensuring tax-exempt sales to qualified Indian purchasers because refunds are available for cigarette taxes paid in connection with such tax-exempt sales. We reject that contention, inasmuch as the relevant provisions of the Tax Law do not support it. Pursuant to section 471-e (4),

> "[a] wholesale dealer . . . who has one or more Indian tax exemption coupons may file a claim for refund as provided for in section four hundred seventy-six of this article with respect to any cigarette tax previously paid on cigarettes it sold without collecting the tax because it accepted an Indian tax exemption coupon from its purchaser pursuant to this section."

Refunds pursuant to that section are available only to licensed wholesale dealers who are able to establish their claim with "one or more Indian tax exemption coupons" (*id.*). In support of their contention, defendants rely upon section 476, the more general refund provision in Tax Law article 20. That section provides for refunds in specified circumstances, including "whenever the commissioner of taxation and finance shall have determined that any tax imposed by this article shall have been paid in error" (§ 476). Neither that section nor the implementing regulation (*see* 20 NYCRR 77.1 [c]) provides a means for documenting or otherwise demonstrating that taxes on cigarettes sold on an Indian reservation were paid in error. The enactment of the Indian tax exemption coupon system in section 471-e was intended, in large measure, to provide such a means for verifying tax-exempt cigarette purchases on Indian reservations. Absent that coupon system, the general refund provision of section 476 is inadequate to serve the intent of the Legislature to collect taxes that are legitimately due while at the same time "leav[ing] ample room for legitimately tax-exempt sales" (*Department of Taxation & Finance of N.Y. v Milhelm Attea & Bros.*, 512 US 61, 76 [1994]).

Accordingly, we conclude that the order should be affirmed. In light of our decision, we do not address defendants' remaining contentions.

HURLBUTT, J.P., SMITH, FAHEY and PINE, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.